UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                                       Criminal Case No. 02-80889
v.                                                         Hon. John Corbett O'Meara

DONALD HYNES,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**

      On March 28, 2005, a jury found Defendant Donald Hynes guilty of six counts of criminal conduct arising out of the theft and sale of cocaine from the Detroit Police Department's property room. Hynes filed Motion for a New Trial on May 26, 2005. The government filed a response on June 22, 2005, and Hynes filed a reply on June 29, 2005. The court heard oral argument on July 6, 2005. For the reasons set forth below, Hynes's motion is denied.

**BACKGROUND**

      Donald Hynes was a Detroit Police Officer who worked in the property room. He was initially indicted, along with eight other co-defendants, on October 9, 2002. One of the co-defendants, John Cole, Sr., was also an employee of the Detroit Police Department who worked in the property room. Cole pleaded guilty and agreed to testify against Hynes. On October 21, 2004 the government filed a third superceding indictment charging Hynes with the following six counts: Count I - conspiracy to distribute five kilograms or more of cocaine, Count II - distribution of five kilograms or more of cocaine, Count III - conspiracy to steal, embezzle and

intentionally convert property under the control of the Detroit Police Department valued at $5,000 or more, Count IV - embezzlement and intentional conversion of Detroit Police Department property valued at $5,000 or more, Count V - conspiracy to launder monetary instruments and Count VI - false declarations before a grand jury. The case was brought to trial before a jury on March 21, 2005. The jury found Hynes guilty of all six counts on March 28, 2005.

## **LAW AND ANALYSIS**

A. Constructive Amendments to the Indictment (Counts V and VI)

Hynes argues that his Fifth and Sixth Amendment rights were violated when the government allegedly made a constructive amendment to the indictment by offering evidence of two crimes not charged therein. A constructive amendment is a change, whether literal or in effect, in the terms of the indictment. United States v. Prince, 214 F.3d 740, 757 (6th Cir. 2000). A variance occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. Id. The two concepts seek to ensure that the defendant is not convicted for charges other than the ones brought against him in an indictment by a grand jury. A conviction is only invalidated because of a variance when it prejudices a substantial right of the defendant. Id.

    1. Count V - Conspiracy to Launder Monetary Instruments

Count V enumerated some specific alleged overt acts of money laundering, including concerning the purchase of properties located on Van Dyke and Hoover Street in Detroit. At trial, the government also presented evidence suggesting that laundered funds were used to purchase Hynes's home in Troy. The evidence relating to Troy property did not materially alter

from the money laundering charge brought against the defendant. Accordingly, this evidence did not create a constructive amendment to the indictment. To the extent that the evidence might have created a variance, Hynes has not established that the evidence prejudiced his defense or affected his substantial rights.

       2. <u>Count VI - False Declarations Before a Grand Jury</u>

       Hynes alleges that the government's closing argument referred to two falsehoods, while the indictment referred to only one falsehood. The indictment identified the following alleged falsehood in Hynes's testimony before the grand jury:

> Q: This check, which was drawn by William Hynes, was used according to the Adams Realty Records, to purchase that barber shop. Do you know anything about how that came to be?
>
> <u>A: No. Today is the first time I heard that</u>.

Hynes argues that the government constructively added a second alleged falsehood in its closing argument, when the prosecutor referred to Hynes's declaration to the grand jury that "…I believe that John is a silent partner…" in a property. The government alleged Hynes knew that Cole supplied the money to purchase that property with laundered funds.

       The defense opened the door to this argument in its opening statement, which cited the same "silent partner" statement as evidence that Hynes was not trying to hide things from the grand jury. The defense's opening statement also asserted Hynes was "trying to help out the government." The prosecutor's statement in the closing argument was a proper rebuttal to those assertions. The comments made by the government did not constructively amend the charge, nor did they create a variance that prejudiced the defendant's substantial rights.

B. Sufficiency of the Evidence - Counts III, IV, and VI

Pursuant to Federal Rule of Criminal Procedure 33, Hynes argues that the evidence at trial was insufficient to support guilty verdicts on Counts III, IV, and VI.  In determining whether evidence at trial was sufficient to support the verdicts under Rule 33, the court should weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed.  United States v. Solorio, 337 F.3d 580, 589, n. 6 (6th Cir. 2003).

1.  Counts III and IV - Value of Stolen Property

Count III charged Hynes with conspiracy to steal, embezzle and intentionally convert property under the control of the Detroit Police Department valued at $5,000 or more.  Count IV charged Hynes with the substantive offense of embezzling and intentional converting Detroit Police Department property valued at $5,000 or more.  Hynes argues that evidence was insufficient to prove that the stolen cocaine had a value of $5,000 or more.  Hynes claims that the cocaine had no monetary or market value because the Detroit Police Department intended to destroy it.  At trial, the court instructed the jury as follows:

> In determining whether any property had a value of $5,000 or more, you should consider the market value of such business or property whether or not buying or selling such property is itself illegal.  The market value is the price which a willing buyer and a willing seller would accept to exchange such property, even if it's illegal to sell such property.

This instruction was proper.  When there is no legal market value for property such as cocaine, a thieves' market is used to calculate its value.  United States v. DiGilio, 538 F.2d 972, 979-81 (3d Cir. 1976); see also United States v. Robie, 166 F.3d 444, 451 (2d Cir. 1999); United States v.

4

Brookins, 52 F.3d 615, 619 (7th Cir. 1995).  The government offered sufficient evidence that the cocaine's value exceeded $5,000 in a thieves' market at the time of the theft.

### 2.  Count VI - False Declaration Before a Grand Jury

In Count VI, Hynes was charged with making a false declaration before a grand jury when he made the following statement:

> Q: This check, which was drawn by William Hynes, was used according to the Adams Realty Records, to purchase that barber shop.  Do you know anything about how that came to be?
>
> A: No.  Today is the first time I heard that.

Hynes argues that the government's question was imprecise because Hynes might not have known the property included a barber shop, and therefore the answer given was not technically perjurious.  Answers that are literally true, but unresponsive, even assuming the witness' intent to mislead is questioner by the answer, are not perjurious.  Bronston v. United States, 409 U.S. 352, 361-62.

When the question is put in the context of the proceeding questions, it is clear that the government unambiguously asked Hynes whether he knew about the origin of the check used to purchase a piece of property.  Hynes claimed that he did not.  The jury could have reasonably found that Defendant's answer was a knowingly false declaration based on the evidence that William Hynes is the father of Defendant Hynes and wrote the check after being requested to do so by his son.

C. Ineffective Assistance of Counsel

Hynes argues that his trial counsel made three errors which amounted to a denial of his constitutional right to counsel: first, he failed to make an argument regarding co-conspirator John Cole's motive to testify against him, second, he failed to object to certain hearsay testimony, and third, he failed to object to a jury instruction. After a careful review of the record, the court is satisfied that an evidentiary hearing on the issue of ineffective assistance of counsel is not necessary. In order to show a violation of the Sixth Amendment right to effective assistance of counsel, Hynes must demonstrate that "counsel's performance was deficient …[and] that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel's performance was deficient:

> [t]he court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance….At the same time, the court should recognize that counsel is strongly resumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690. The defense was prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. An attorney's failure to raise a futile argument does not constitute ineffective assistance of counsel. Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000).

Hynes fails to establish either prong. Though counsel could have argued possible alternative motives of the Government's witnesses, the failure to do so in this case amounts to strategy and is not so unreasonable as to deny Defendant's constitutional right to counsel. The objections Hynes argues his counsel failed to make would have been futile even if they were made. The jury instructions properly distinguished John Cole, who offered to testimony as part

of a plea agreement, from Anthony Lasenby, another government witness who agreed to testify in exchange for immunity.  The hearsay evidence was properly admitted as the statement of a co-conspirator made in furtherance of the conspiracy.  Even if this objections would have prevailed, the failure to object to possible hearsay statements or jury instructions falls within the discretion of counsel and does not necessarily demonstrate deficiency of performance.

Moreover, Hynes has not shown that the outcome of his trial would have been different but for the alleged errors of his counsel.  The mere existence of alternative trial strategies does not create prejudice.

D. The Great Weight of Evidence - Counts I, II, III, and IV

In evaluating a motion for a new trail based on the weight of the evidence, the trial judge can consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice.  Solorio, 337 F.3d at 589, n. 6.  Hynes claims that the government failed to prove that he changed the status of evidence in the police department's database, as alleged in the indictment.  However, circumstantial evidence was offered from which the jury could reasonably have inferred that Hynes changed the status of the evidence in the database.  In addition, the other testimony, physical evidence, and documentary evidence offered by the government was sufficient for a reasonable jury to convict Hynes of Counts I, II, III, and IV.  A miscarriage of justice has not taken place.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's May 26, 2005 Motion For A New Trial is **DENIED**.

        s/John Corbett O'Meara
        John Corbett O'Meara
        United States District Judge

Dated:  July 18, 2005